Here ye, here ye, this Honorable Appellate Court of the Second Judicial District is now back in session. The Honorable Robert W. Ketterer presides. Please be seated. Your Honor, the second case on the docket, Your Honor, is 2-22-0-3-5-0. I'm ready to measure the terms of Carty, Petitioner Appellate, and Robert Carty's respondent accounts. The people of the State of Illinois think that Appellate would be Robert Carty, Petitioner Appellate. The argument on behalf of the accountants is that it should be spread on the behalf of Appellate, Mr. Kramer, and Coon. Mr. Kradner, you may proceed. Good morning, Your Honors, and may it please the Court. The issue is a rather simple one. Is the result of a portable breathalyzer device a record generated by an electronic process or system, which is for the purposes of trial intended to produce an accurate result, and is the data that is retrieved from an Internet server therefore copied from an electronic device, storage medium, or file? The clear answer is yes. Where a person blows into a breathalyzer device and that device produces purportedly some sort of result, if you are going to offer that result at trial and purport it to be true, you must establish as a foundational requirement some authentication for the methodology and the reliability of the result itself. Why is it not self-authenticating under the business record itself? It can be if the self-authentication complies with Rules 902.12 and 902.13. Those rules specifically allow for self-authentication of electronically generated and electronically stored records if the authenticating certificate complies with and contains the language within those rules. We are only raising that because the certification did not contain that additional language, it was not self-authenticating. Very well it could be, but that's not a question before the Court. Counsel, why doesn't race it somewhat local or apply in this case? Well, that's a complicated question, Your Honor. When you're dealing with electronic devices, especially ones that are commercially available, it's not as though this is a process that's administered by probation services. No, that isn't what I'm getting at. What I'm getting at is I think part of your argument was that some of the evidence that was incriminating related to the fact that there was no test taken or there was no test recorded being taken. Correct. And the point is is that it was your client, was it not, who was the person who supposedly was blowing into this device at the time. Or not blowing into it. Or not blowing into it. Correct. And I think that's where we get into the problem of authentication. If there were more information that were provided at the trial court, we may be in a completely different circumstance. Well, how is the opposing party, if they aren't present when the blow or the alleged blow takes place, supposed to provide information? Why isn't, like race, it's a locator? Why is it your client required to say, oh, yeah, I looked at my calendar and I wrote down I blew, but nothing came of it, so to speak? Well, in the context of a criminal proceeding, I think shifting the burden to the defendant would present certain Fifth Amendment implications. Is this criminal or civil? It's quasi-criminal in that it's a criminal contempt proceeding. So as cited in our brief, defendants in criminal contempt proceedings are afforded all the same due process and constitutional protections as criminal defendants in ordinary criminal matters. But even if you look at the, you know, how you would prove up a defendant's noncompliance, our assertion for the purposes of this appeal is only that have the corporation, through its records custodian, certify that what the methodology is, that these breathalyzer tests function by whatever methodology that they use, that that is an accurate methodology. But is the methodology what's important here? Because we're not looking at the results. We're looking at the lack of results, correct? So how is the methodology relevant? Because I still think that is part of the methodology. If the rule requires or applies to any record generated by an electronic process, the question is only what is that process and is it designed to be reliable and accurate? Those are the questions of the business record exception. That is exactly right, which is why 902.12 adds requirements beyond what 902.11 does. Obviously, we've had 902.11 for decades. 902.12 is a new creation. It was created by the 2018 amendments. It didn't come into effect until 2019. This is a rather new rule that we're dealing with that creates additional foundational requirements. Well, how about 803.6? In the hearsay of records that are kept regularly in the course of business, it's in the course of business that the records are kept and made. How is that not applicable, especially when you're not looking at results, you're looking at the procedures kept by the company when taking the tests as well? Setting aside our other arguments that we think 803.7 and not 803.6 is more applicable, if you take the presumption that 803.6 is the correct rule, then, yes, that establishes that it is an exception to hearsay. But that's a different question than properly authenticating and laying foundation for the hearsays and disability. That, we think, must comply with all of the 902 series. If the document is... If we're trying to get the results in. If you're trying to get the results in... Test results. It's our argument that even something stating no test was taken is still a result, because at some point between the person and the electronic printout, there is an electronic process that is deciding and determining and generating whether or not there was or was not a test. There is still some sort of electronics going on between point A and point B. The device, the servers, the company, the system still has to somehow figure out whether or not there was a test. That is an electronic process. If he didn't show up for the test or didn't submit a test result, how... I guess my question is that there are safeguards built in to admissibility of these test results for a good reason, because you can't just say, oh, somebody's not going to tell us how they came across, came up with these test results. They're going to have to give us some good reasoning and some background, lay a foundation for these test results, correct? Yes. Makes sense. Yes. What would the harm be in admitting a business record that the defendant did not submit to the breathalyzer on that date? If it is properly certified, my answer is nothing. For the purposes of this appeal, whether or not if there were a 902.12 and 902.13 certification, the document would therefore have been admissible or not, the court can kind of set aside. Because at the end of the day, we can all agree that whatever the certification says, it does not include language required by 902.12 and 902.13. So if those rules apply, the document was inadmissible, it could not be considered by the trial court, and it was the only relevant evidence presented at trial on the point. Does it matter that your client selected this particular machine and inherently assumed that it was relevant, reliable, met all the standards and specifications? I don't believe it does for a couple of reasons. Number one is at the end of the day, it was in certainly an agreed order, an agreed judgment, that was ratified by the court. So there is kind of that shared, both parties agreed to this, but the court signed off on it. The other problem is I still think that starts to get into certain constitutional due process implications, that simply by agreeing to utilize this device, you waive all arguments in later criminal proceedings. Well, not all arguments. Not all arguments. Just I picked it. I'm your client. I selected this machine. Maybe it was cost, maybe it was convenience, for whatever reason. Isn't there something to be attributed to that? Maybe. But when it comes to the simple question of whether the process is reliable or not, I think that places a pretty heavy burden on laypeople and clients to pick out a system that is inherently reliable. I think that is something where, frankly, the court should be the one to step in and say, I'm not letting you use that system. If you want to have this agreement, you have to use this system because it's more reliable. Well, it's still going to be a function, whether you pick the system or not. Correct. That's an inherent problem in any electronic system is there could be issues with reliability, which is Which is the basis for laying the foundation for test results. Right, which is what 90212 exists for. That's the whole function of it, is to simply have that one additional fact of, not only did we keep this record in the regular course of business, but we know it to be accurate. We know it to be genuine. Because at the end of the day, nobody was there, so all they had to do was certify, this is our process, it is a reliable process. That's it. There's a couple lines on a piece of paper that were missing that were needed to lay the foundation. Hypothetically, how would that be presented? That, according to 90212, could be presented by certification. That same business record certificate that the trial court relied on to allow the document under 90211, if there was two extra lines, we, our electronic devices operate based off of whatever methodology. I don't know enough about breathalyzer devices to know whether there's different methods for breath testing. But if it says, this is the method we use, we know it to be a reliable and accurate method, I think that complies with 90212. I think that's all that is necessary. And then it does shift to the defendant to say, if you want to argue that what's in the certification is untrue, you need to subpoena that person, you need to get an expert, you need to drag somebody into court and have them testify. All 90212 says is put those two lines on that piece of paper. And it may sound like an extremely technocratic position to take, that but for a few words, this person could or could not be adjudicated of criminal guilt. But the rules say what they say. They exist for a reason. We have these rules for a very specific reason, and they must be strictly complied with when you're looking at the admission of documents, particularly when adjudicating criminal guilt. I will raise that there were some other obvious arguments within the brief itself. Strictly speaking, there is a question about whether 8036 or 8037, business records versus non-business records, is the applicable exception. I think 8037 makes more sense in the context. This is not a circumstance, to put it a little bit colloquially, if the device sends to the business servers a signal saying, hey, I did not receive a test result, that is a piece of data proving some event. But if the device sends nothing to the server, and the server takes that and interprets that and puts a line on a data sheet saying no test was taken, now that's no longer a business record proving occurrence. It's the absence of data proving a non-occurrence. So we do have a problem in terms of, foundationally, whether 8036 was the proper exception to begin with. If it's an 8037 exception, that cannot be authenticated by certification. The case law side in our briefs make clear that if it's the absence of a data point, the absence of some record to prove the absence of a test. Now, did you argue this down below, or did you argue this the first time on appeal? It was, I think, at best a passing reference at the trial level, that the document was being offered to prove the non-occurrence of a test. It was, frankly, a passing reference at the trial court level. It was not argued as explicitly as the issues of the accuracy, the reliability, the data transmission. Why is it not a core feature? I mean, it's borderline, if I'm being frank. The argument was certainly raised that the trial court was using this to conclude or prove up some sort of non-occurrence as opposed to some sort of occurrence. Was 8037 specifically cited? No. Was a whole lot of time and weight put into it? No. But the argument was at least raised in some form or fashion. Can you point to the record where you raised it? Yes. Is this a Wi-Fi device? We don't know. That's part of the problem, isn't it? Quite frankly, I know the answer. I've worked with these devices before, but it's nowhere in the record. There's nothing to establish how this device specifically works. That could be part of the problem. Part of the problem I'm having with this is that, for instance, using as an analogy a DUI back measurement, it's run by a person who is supposed to have some knowledge and has been certified as an operator. And this person testifies, lays a foundation for this information. This device is being run by a client, and I'm having a hard time understanding who should be certifying what happened when the custody control and operation of that device appears to be your client. And so when you say these things should be presented, presented by whom? By the bailee or the bailor? When the item that was the subject of a bailment comes back damaged or disappears? I'm having a serious problem with your argument about who's supposed to certify this when your client is the one who's in custody and control of this device. Can you give me a rational explanation why your client shouldn't be required to testify as to whether or not he wrapped the device in aluminum foil so if it was a Wi-Fi it couldn't respond and record down at the cloud or wherever it was recording the results? Did your client blow half-heartedly into the device? How are we supposed to know that these results haven't been adulterated by your client because he was in control and apparently nobody was supervising him? Before you answer that, did you find anywhere in the records where he raised that issue? So, as I said, there's some vague references. I'm on page 80 of the report of proceedings. There are references that we don't know how these test results were gotten. We don't know where they come from. So I acknowledge that it is a bit of a stretch to say, well, that at least opens the door to raising that we don't know whether these are data points or the absence of data points because we don't know where the data is coming from. So it's a stretch, but there are at least some vague references in there to say we don't know whether this is data or the absence of data. We don't know whether this is evidence of occurrence or non-occurrence. Thanks for your forthright answer. And to that question, I think there are two ways to take it, Your Honor. Number one is that we still have this fundamental question of Fifth Amendment rights. Whether the court wants to or not, you can't burden shift onto a defendant to say, if this record shows this, it's criminal liability unless you waive your Fifth Amendment rights and appear at court and testify. The burden now shifts to you to prove that you did comply in the absence of anything else. It's not civil contempt where that would be an appropriate step. It's criminal contempt. The other part of it is that maybe that's a reason why these types of orders simply aren't workable. That's not a question before the court, is whether having family courts order this type of breathalyzer test without supervision is workable at all. My opinion is it is, because under 902.12, you don't have to have the full gamut of certification and authentication that you would in a DUI or ordinary criminal proceeding. You only need that extra line that the process is reliable. Are there no other questions? I have a couple. Sure. I'm troubled by the whole context here. Burden of proof was on your client from the get-go. If he was to have the children to establish that he had not consumed any alcohol, and he would establish that through taking these tests. So while I appreciate Fifth Amendment and due process rights, it seems to me when you put it in that context that the burden was on him under the court order. Somewhat puts his due process rights in a different light. I think it would depend on what the remedy being sought is. If there were a civil contempt order or petition saying, Judge, we want some coercive remedy. Right, but there isn't. Correct. I mean, I would agree with you that the remedy is he doesn't ever see his children. Period. Done. No visitation. Nothing. Right. And if that's what was petitioned for and sought, if it were a motion to modify under the Illinois Marriage and Dissolution of Marriage Act, this is a completely different context, because I think now the court can say, you agreed to this. I want to hear from you. The other side can call the defendant as an adverse witness and ask him those questions. But down that line, he did agree to this. He did agree to use this machine. In fact, he picked it. What also came in was through her testimony, I believe, and they communicate, there have been no complaints. At no time had he ever said, oh, you didn't get a result. Gee, I took the test that day. There was none of that. So can't we consider all of the evidence, including circumstantial evidence, statements against interest, or the absence of statements to support, like, what he might have said to the mother of these children? Yeah, I did take the test. Gee, you should have gotten a 0-0. None of that occurred. Can't we consider that as part of the totality of the evidence? In addition, there were past noncompliances by this guy where they're not, where he didn't take the test. Completely separate from this contemporary. Correct. Completely separate from this. There were. Right. There were. Now, on that issue, I don't think the court's supposed to or allowed to consider that. Now you get into a character evidence issue. Now you get into a propensity issue. Well, it doesn't get into his knowledge. I mean, if you come in now and say, well, they had to prove that he actually didn't take the test, he knows that there were times in the past where he did not take that test. There was noncompliance in the past. So we can take that into consideration, can't we? I think you could. So that's where we get into one of the later arguments in my brief, which is, was there guilt beyond reasonable doubt? If you remove this document, if you pretend for the sake of argument it's not admissible, 90212 or 90213 applying, you're just left with all the other extraneous contemporaneous evidence. Does that still constitute guilt beyond a reasonable doubt? I think the answer has to be no, not guilt beyond a reasonable doubt, because now we are in that circumstance where you're saying, well, this person could have said something and they didn't, and they agreed to use this device. And I think it would be a dangerous precedent to set for future cases that, because a person agreed to utilize this device, they've essentially waived certain Fifth Amendment or due process or constitutional rights, because I'm sure there are other people on these types of orders. To say anybody, since these devices have existed, that has agreed to use them, now has limited constitutional rights in criminal contempt proceedings, as opposed to any other defendant in criminal contempt proceedings, I just think it's a real slippery slope to go down that road and say that without something explicit, you've essentially waived and limited your own constitutional rights simply because you agreed to use this device. Because the only reason and the only basis upon which the family court judge decided to allow you to have visitation, there is a quick quote there. And that's where I rewind to, maybe the conclusion really is, as we go down this road, that these types of orders aren't workable. Maybe the solution is that when trial courts get an appellate order that says, no, you have to have the foundation for the reliability and accuracy of the device at the time it's operating, you very well may get trial court saying. The policy decision is if you want to do this and you have to submit 00s, you're going to have to every morning go down to your local police department and pay them a fee to take a breathalyzer. Isn't convenience due part of why your client agreed to do this? It is. And to use an analogy, that's exactly what people do in non-alcohol situations. You get people that are ordered to report to the police station, probation services, or wherever to submit tests for cocaine, for marijuana. That's normal. And if the end result is that trial courts say, that's what we're doing for alcohol now because, you know, we got this opinion back and 90212 says what it says and I'm not going down that road and I don't trust that we'll be able to use it at a later hearing, then maybe that's the result. Sir, the time is up. We'll give you a chance to make your bubble. Thank you. Ms. Kuhn? Is it Kuhn or Kuhn? Kuhn, Your Honor.  You may proceed, ma'am. Thank you, Your Honor. Good morning. Good morning. Katrina Kuhn for the people of the State of Illinois. Good morning, counsel. May it please the Court. The people would like to begin by answering Justice Shostak's question about whether this has been forfeited. There is no mention in the record, as I believe counsel conceded, of 90212 or 90213, and there are reasons for that, which I will get into. The people recognize that forfeiture is not a limitation on this court. However, there are reasons why forfeiture should be considered in this case. Is it a procedural default? The difference between the two? Procedural default is essentially a forfeiture that, had it been raised at the time, the trial court or the opposing party or both could have addressed the problem and resolved it or at least prepared a record for review. Your Honor, and that is exactly part of the problem, is that we don't have the ability to turn back time and see what would have happened had this been raised. And one threshold problem with defendants raising of 90212 at this stage is that certified records generated by an electronic processor system, as I discussed in my brief, do not involve any type of human action or non-action. They are something like a cell phone record or something that is internally processed by a computer. So it is not something that really even fits in this mold, which is why it was probably never raised in the trial court. I refer to that, and I'm referring to page 11 of my brief, and I cite the case of Holoko. But that goes into the difference between computer-generated data, computer-stored data, etc. This evidence was offered under 8036 and 90211. And just to close up on forfeiture, the trial court needed to have the opportunity to consider this claim. And defendant cannot now obtain relief by his own inaction. There needed to have been the trial court to have the fair ability to consider this claim, for Your Honors, to raise it. And going to the specifics of 8036, 90211, etc., here it was offered under 8036. Defendant has the burden of affirmatively establishing that an error occurred in the admission of the evidence. And this was properly admitted as a self-authenticating business record. There was no intrinsic evidence necessary to authenticate it, and the report indicated that the defendant failed to provide results on required dates. And what maybe would have happened had this been raised earlier is the full course of 8036 and 8037 may have been put in play. 8036 and 8037 allow the ability for defendant or the opposing party to rebut the evidence. 8036 allows the occurrence. 8037 allows the non-occurrence, which is what happened here. And the opposing party can show that the source of information or the method and circumstances of preparation indicated a lack of trustworthiness. That seems to me what defendants can argue now is that, well, we don't know how this was measured. We don't know what happened when defendant didn't, you know, blow or whether he wrapped it in foil or whatever. But that is what no such offering was made, and that was the opportunity, and that was the mechanism by which defendant could have challenged this. It doesn't have anything to do with 902.12 or 13. He never mentioned them in the trial court. He never responded to the motion in Lemonnet. He had ample time, as I stated in my brief. There was no specific objection written or oral to the offering of the evidence under 8036. Was there ever any testimony or evidence at the trial court that he was having a problem with this machine during that time period? Was there testimony that he was? By the defendant. Was there ever testimony by him that he was having a problem trying to blow and that he wasn't getting a result? No, there was no testimony, and there was no testimony that there was no indication that he reported anything to his attorney. There was no indication that he had gone on to his online report, which he could view at any time, and found that it didn't comport or didn't comply with what he had done himself. There was no evidence as to that. That doesn't implicate or place a duty on the defendant to present evidence. He had a duty to communicate with his co-parent, and he had a duty to communicate with his counsel, and he had a duty to provide breath test results under the court's order. And as Your Honor has noted, this was a part of an agreed, you know, parental agreement. And the parties agreed as to the type of device that would be used. The fact that he agreed to the type of device doesn't mean that he just forgoes the validity of that device, does it? No, Your Honor, it doesn't. It does show that he was on board with what was happening, that he was agreeing to provide results, date and time stamped with face recognition at certain times. And there is no, you know, he was required to do that, and he did not. And, Your Honor, the question was brought up about Wi-Fi. There was no indication in the record as to that. And that's an example of something that could have been fleshed out below. You know, that could have been explained below. You know, at this point, we have a limited record because the defendant did not raise any of these matters below. Could I just have just a moment, Your Honor? Sure. And so the trial court, based on what was argued to it, made the decision that it was a self-authenticating business record. And defendants' arguments at this point go to the weight of the evidence and not the admissibility. The weight of the evidence established beyond a reasonable doubt that defendant violated the court order. And this evidence must be viewed in light, the light most favorable to the people. The court could conclude that if there was a result that was not provided, it was because defendant did not provide it. And to answer some of your questions to the defendant, defense counsel, it's not a violation of the Constitution to find intent by circumstantial evidence. That happens all the time. That is the only way to determine criminal intent in many cases. A contemptuous state of mind can be proved by circumstantial evidence. And that intent can be inferred from the surrounding circumstances and the character of his conduct or nonconduct. The fact that he didn't report any issue. The fact that he had previous noncompliances, as I referred to in my brief. And the court could infer the defendant's intent. The defendant, of course, would be aware that he had not provided a result. And he could, as I've noted, he could access his own report. The absence of entries for the dates that he was required to, which are not contested, shows his knowledge that the results were not provided. Again, this does not place a duty on the defendant to present evidence. He had the duty to provide the breath test results. And the bottom line is, did defendant provide the results? No, he did not. He violated the trial court's order. Again, I refer to page 11 of my brief, which discusses computer-generated versus computer-stored data. And here the record was admitted under 902.11 certification, which does not contain additional requirements as the defendant is arguing. Defendant never argued those rules before. Like you argued before, the lack of taking the test doesn't include computer-generated information, correct? I mean, it's not like something that needs to be, even arguing in Muendo that he did not forfeit something below. How is the lack of results something that needs to be authenticated because it is computer-generated? Or would it have to be? Well, that goes to 803.7, which is the absence of an entry kept in the record. And 803.7 does not contain any additional certification requirements. It incorporates 803.6 by reference, so it really works in tandem with 803.6. It's simply saying that if you have a record that was offered under 803.6 and it says ABCD, the fact that it doesn't say E and it's raised as an issue can be considered when the record was provided and authenticated under 902.11. It can prove the non-occurrence if that is a matter of a kind of a report which is regularly made, as we have here. He shows it, the report, the exhibit shows his compliance on certain dates. He's not saying that those were incorrect. He's not having any problem with those. He's simply saying that there was a failure to, you know, that there's an absence of entries. And 803.7 includes the same allowance as 803.6 does, allowing the opposing party to then come in and say that there's some lack of trustworthiness or some surrounding circumstances. Again, that did not happen here. Defendant had the full ability to raise that in the trial court. Again, the people, you know, the way the evidence established beyond a reasonable doubt that defendant violated the court order and the court could infer defendant's intent from all of the circumstances surrounding this. And the absence of entries shows his knowledge that the test results were not provided. Your Honors, are there any other questions I may answer? Any questions? No. Nothing further. Thank you. No further questions. For those reasons, Your Honors, the people ask that the judgment of the trial court be affirmed. Thank you. Thank you. Mr. Brandner, you may proceed with your rebuttal. Your Honors, I'd like to begin by addressing the whole Holoco case cited by counsel and cited in their brief because I think that is a red herring at best. The Holoco case, number one, came well, well, well, well before 902.12 and 902.13 existed. So the fact that it's making reference to compliance with 902.11, it has to because it was the only rule that existed at the time. But the case wasn't even about rules of evidence. The appellate court in that case was deciding whether or not the relevant documents complied with Section 115 of the Code of Criminal Procedure.  It was never a question of authenticity because they had witnesses show up at trial and testify to the authenticity of the documents and the processes and the methodology. The only question was, does the criminal procedure here say rule disallow it regardless of authenticity? And I think the State varies the lead because the closing line of that appeal makes clear that the admission into evidence requires foundation proof of the method of the recording of the information and the proper functioning of the device. The appeal that they cite to or the case that they cite to is kind of the crown jewel for, well, these are computer generated and not computer stored, so these rules don't apply, make clear in its absolute closing line that you still have to authenticate the process, the methodology, the accuracy. I don't think those arguments were wavered when I was going back and forth with Justice Shostakoff. I think we were talking about specifically 8037. The question of the accuracy and the authenticity and the reliability of the tests and the methodology are raised. I stopped counting it about 15 times in the trial record. It was raised in the motion in Limine. It was raised in the motion for directed finding. It was raised in closing arguments repeatedly. So the question of authenticity, reliability, which are the 902.12 and 902.13 considerations, those I think very clearly were raised at the trial level. Was that specific rule cited chapter and verse? No, but there is no case law that requires you to do so. You don't have to specifically state the actual rule number that you're arguing. You can make the argument as long as the substance of what you are arguing comports with the language of the rule. And it occurred to me as counsel was arguing that there very well may be actually much simpler ways that trial courts can go about this in the future if the court were to hand down a ruling in the defendant's favor. The courts could state you as a defendant under my order have an affirmative obligation to periodically check your test results and report to your co-parent if there are inaccurate results. The trial court could easily include language in that in future orders. And if that were to be the case, if you show up on criminal contempt in a situation like this, well, now you've got two avenues for contempt. If you can't authenticate the test results, you can say you're still in contempt for not complying with my order to timely notify your co-parent that there is an issue with your system. Why would there need to be a preemptory order entered when in the normal course of events of a hearing on a contempt citation, your client would be given the opportunity to do exactly what you claim the trial court should have ordered him to do, but he could have done it on his own volition? Because if it is done within the context of the restriction on parenting time, you don't have Fifth Amendment implications. If you do it within the context of the criminal proceeding and say, I'm going to presume this information to be accurate and reliable unless you, the defendant, testify and prove otherwise, that's impermissible burden shifting. You can't do it in a criminal proceeding, but you can do it within the context of a restriction. And it's your contention that it doesn't make any difference that your client is the person who is in control and custody of the device? For the purposes of burden shifting, no. Because I don't believe, as I read 902.12, that it would require the kind of foundation that you would need in DUI cases, where you have to lay foundation that this particular individual device was working properly. 902.12 does not include that. 902.12 only requires authentication of the reliability of the process, not the individual personal device itself. So I don't think that you would need that kind of foundation that you would in other types of criminal cases under 902.12. Kind of tagging on to Justice Jorgensen's questions or comments, the fact that your client chose this device, would that not be essentially invited error, at least insofar as the arguments that you're making regarding the fact that this device supposedly doesn't do the things that you are claiming haven't been proven? If it were the case that there were evidence that the device was not working properly, maybe. That very well may be the case. But we're in that middle ground. There's no evidence one way or the other, and it was the State's burden, the prosecution's burden, to prove beyond reasonable doubt that it was working. So if the contention were if we kind of put on a whole song and dance at trial stating that we have evidence that it was never reliable in the first place, that the entire system is bupkis, then yes, that very well may be some sort of invited error. But that's not what we have here. What we have here is just a simple question of it's the State's obligation to prove these foundational elements, to prove the necessary authentication and foundation for the admissibility of their evidence, and they did not. They simply asked the court to assume it's all accurate and place the burden on the defendant to waive his rights and prove otherwise. That's what we believe to be the reversible error here. It's why we're asking this court to reverse. Any questions? No, thank you. Did you make the signal or not? Yes. That's what I thought. We have one more case on the call. We'll take a short recess.